ASHLAND OIL, INC., a Kentucky corporation; Bell Fuels, Inc., a Nevada corporation; Jasper County Farm Bureau Cooperative Association, an Indiana corporation; and Marathon Petroleum Company, an Ohio corporation, Appellants (Plaintiffs Below),

v.

Toy Rex ARNETT, Jr.; Rena Arnett, his wife; Thomas Arnett; Super Payless Gas, Inc., an Indiana corporation; and Charles Arnett, Appellees (Defendants Below).

No. 3–885A216.

Court of Appeals of Indiana,
Third District.

Aug. 28, 1986.

Rehearing Denied Nov. 7, 1986.

Robert S. Nesbitt, Fisher and Nesbitt, Rensselaer, Stephen J. Schostok, Melbourne A. Noel, Jr., Richard G. Siegel, Brad A. Levin, Laser, Schostok, Kolman & Frank, Chicago, Ill., for appellants.

Karen L. Hughes, Larry Evans, Barbara A. Young, Hoeppner, Wagner & Evans, Valparaiso, for appellees.

HOFFMAN, Judge.

This is an appeal from orders of the courts of Jasper, Lake, Marshall and Newton counties. In November 1984, plaintiffs/appellants filed prejudgment attachment proceedings in each of the four counties in order to prevent disposition of property owned by the defendants/appellees prior to the rendering of decisions in suits filed by appellants against appellees in the United States District Court for the Northern District of Illinois and the Northern District of Indiana.

The appellants executed a bond in each court pursuant to IND.CODE § 34–1–11–5 (1982) which provides:

"Sec. 5. The plaintiff, or some one in his behalf, shall execute a written undertaking, with sufficient surety, to be approved by the clerk, payable to the defendant, to the effect that the plaintiff will duly prosecute his proceeding in attachment, and will pay all damages which may be sustained by the defendant, if the proceedings of the plaintiff shall be wrongful and oppressive."

The bonds were in the amounts of $100,000.00 in Lake County; $150,000.00 in Jasper County; $75,000.00 in Marshall County; and $40,000.00 in Newton County. Each court entered an order of attachment attaching the real property of the appellees in the respective counties.

In each court, the defendants filed a motion to quash attachment proceedings and for damages and costs. After filing a motion to reconsider the denial of the motion in Lake County, the defendants filed a petition for a writ of prohibition and mandamus with the Indiana Supreme Court alleging that the Lake County Superior Court was without jurisdiction. The defendants argued that because the underlying main action was filed in the Federal District Courts, the county courts had no jurisdiction of the defendants nor the subject matter. The Court issued a writ of prohibition ordering the Lake Superior Court, Room Five, and Judge Richards as judge thereof to "refrain from the exercise of any jurisdiction in this cause and expunge from the record all of the proceedings in attachment including but not limited to the petition for prejudgment attachment, affidavits, order of attachment and any and all returns filed by the sheriff." A copy of the writ was filed in each of the other three county courts. The Jasper Circuit Court entered

an order to quash for lack of jurisdiction, the Marshall Circuit Court ordered the attachment terminated and declared null and void and the Newton Superior Court ordered the attachment vacated and dissolved as the Federal District Court had acquired exclusive jurisdiction of the cause.

The defendants then filed motions for costs and damages against the attachment bonds as provided in IND.CODE § 34–1–11–5 above, IND.CODE § 34–1–11–38 (1982) which provides:

"Sec. 38. Every defendant shall be entitled to an action on the written undertaking of the plaintiff or creditor, by whose proceedings in attachment he shall have been aggrieved, if it shall appear that the proceedings were wrongful and oppressive, and he shall recover damages at the discretion of the jury."

and Ind. Rules of Procedure, Trial Rule 65.1 which provides:

"Whenever these rules or other laws require or permit the giving of security by a party to a court action or proceeding, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits himself to the jurisdiction of the court and irrevocably appoints the clerk of the court as his agent upon whom any papers affecting his liability on the bond or undertaking may be served. His liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the sureties if their addresses are known. This rule applies to bonds or security furnished on appeal, and enforcement shall be in the court to which the case is returned after appeal."

The Lake Superior Court heard the motion for costs and damages and entered an order that it was unable to act in any manner in the cause, except to order the record of proceedings expunged as required by the Supreme Court mandate.

The Jasper Circuit Court heard the motion for damages. The court found the attachment to be oppressive because of the lack of jurisdiction to entertain the proceeding, and the defendants entitled to damages pursuant to plaintiffs' bond. The damages shown consisted solely of attorneys' fees and $3,500.00 was awarded.

The Newton Superior Court heard the motion for damages and found the defendants had incurred reasonable attorneys' fees in the amount of $5,342.65 to obtain a dissolution of the attachment order. The defendants recovered that amount plus costs.

The Marshall Circuit Court heard the motion for costs and damages. The court found defendants Charles and Norma Arnett had property attached in Marshall County which property was the subject of a real estate transaction. However these defendants had failed to show the attachment had caused the delay in closing that pending transaction. Therefore these defendants recovered only attorneys' fees in the amount of $665.00. The remaining defendants were found to have had no property in the county which was subject to attachment and were therefore not entitled to damages.

The attachment plaintiffs appeal the award of damages in the Jasper, Newton and Marshall courts. The plaintiffs allege error in the assessing of damages against the bonds because, as restated: the plaintiffs were not proceeding contrary to established law, the elements of wrongful attachment are not satisfied and the plaintiffs have a good faith defense to the proceedings upon the bonds. The attachment defendants respond that the Jasper and Newton courts have properly awarded damages against the bond. Defendants also cross-appeal asserting that the Lake Superior Court erred in refusing to award damages and the Marshall Circuit Court erred in failing to award damages to all defendants covered by the bond. In their reply brief, the appellants also assert the courts lack jurisdiction to issue the award against the bond because the lack of jurisdiction of the attachment proceeding rendered the proceedings void.

As a preliminary matter, it is necessary to address the nature of and relationship between an attachment proceeding and a proceeding upon the attachment bond or undertaking. An attachment is a statutory ex parte proceeding. *Transcontinental Credit Corp. v. Simkin* (1972), 150 Ind. App. 666, 669, 277 N.E.2d 374, *trans. denied. [See further:* IND.CODE §§ 34–1–11–1 through 34–1–11–6 setting forth the actions required for issuance of the writ of attachment.] In order to procure an attachment order, an undertaking is required to protect the defendant to the extent of damages incurred if the attachment should be determined to be wrongful and oppressive. IND.CODE § 34–1–11–38; *see: Trentman et al. v. Wiley et al.* (1882), 85 Ind. 33.

The bonds provided in this case were as follows:

"BOND

KNOW YE MEN BY THESE PRESENTS that Jasper County Farm Bureau Cooperative Association, Inc., as surety, are held and firmly bound unto the defendants in the above entitled action in the sum of $_____ to be paid by them, their heirs, executors, administrators and assigns, and to which payment we bind ourselves, our heirs, executors, administrators, jointly and severally, as surety in the above entitled cause.

Executed this 13th day of November, 1984 at Rensselaer, Indiana."

Pursuant to these bonds and the statute, IND.CODE § 34–1–11–38, *supra*, the issue in a proceeding upon the bond is whether the attachment was wrongful and oppressive.

▮ The Indiana Court of Appeals summarized the case law as to what constitutes wrongful and oppressive pursuant to the statute in *Vurpillat et al. v. Zehner et al.* (1891), 2 Ind.App. 397, 400, 28 N.E. 556, 557:

"In *Harper v. Keys*, 43 Ind. 220, it was held that, in order to give the attachment defendant an action on the undertaking, it is *not necessary that there should have been an issue made on the affidavits,* and a finding in the attachment proceedings in favor of the defendant therein; and that without any issue on the affidavit, if the attachment proceedings were wrongful and oppressive, the defendant has a right of action on the undertaking, though the plaintiff had a good cause for his principal action and recovered therein.

In *Trentman v. Wiley*, 85 Ind. 33, where the action was on an undertaking in attachment, an answer alleged, in effect, that the attachment defendants had purchased the goods which were attached of the attachment plaintiff, and at the time of the institution of the attachment proceedings the attachment defendants were selling said goods for the purpose of cheating and defrauding the attachment plaintiff and their other creditors, and that by reason of such facts said proceedings were not wrongfully, but rightfully instituted. It was said by the court that, *upon the assumption that the complaint on the undertaking did not show that the judgment was upon the merits in the attachment proceedings, the attachment defendants would, nevertheless, be entitled to such damages as they had sustained,* and that said answer alleged no fact in bar of the action on the bond.

In *Sannes v. Ross*, 105 Ind. 558, 5 N.E. 699, it was held that *where, in an action on an attachment bond, it was shown that the attachment was dismissed or abandoned, it thereby appeared that there was a failure to duly prosecute the proceedings in attachment according to the condition of the bond,* and that the plaintiff was entitled to introduce evidence of the amount of damages sustained by the seizure of his property under the writ."* (Emphasis added.)

Summarizing this case law it would seem that the assertions of the affidavit need not be determined to find the proceedings in attachment wrongful and oppressive. *Harper, supra.* The affidavit must contain the following:

"Sec. 4.1. The plaintiff, or some person in his behalf, shall make an affidavit showing:

    (1) the nature of the plaintiff's claim;

    (2) that it is just;

    (3) the amount which he believes the plaintiff ought to recover; and

    (4) that there exists in the action some one of the grounds for an attachment above enumerated."

IND.CODE § 34–1–11–4.1.

Therefore it appears that, contrary to appellants' argument, even if there has not been an issue made as to grounds for the attachment or the underlying claim, the attachment may be found to be wrongful and oppressive. *Harper, supra.* This position is verified in *Trentman, supra,* where the Court indicates the defendants may be entitled to damages sustained by an attachment even if the merits of the proceedings have not been determined. These decisions are consistent with *Sannes, supra,* which holds generally that if the attachment is dismissed or abandoned there can be a recovery upon the undertaking.

Again in 1899, the Supreme Court addressed the wrongful and oppressive issue. In *Waring v. Fletcher* (1899), 152 Ind. 620, 626, 52 N.E. 203, the Court held that where the plaintiff in attachment sustains the proceedings by being awarded a recovery against the defendant in a manner consistent with the allegations of the affidavit and therefore covered by the bond, the defendant may not recover against the bond even though the recovery is miniscule compared with the debt alleged and secured by attached property. The exception to this would be where it is alleged and proved that the writ excesses were obtained maliciously and without probable cause. The point of this decision is that if there is a recovery against the defendant consistent with the allegations made by the plaintiff to procure the attachment, the entire attachment proceeding is sustained and the defendant may not recover against the bond. This decision cannot be translated into a holding, as asserted by appellants, that an attachment is not wrongful unless the defendant can show a total absence of statutory grounds for same. In *Waring* the Court stated the law of Indiana to be that the grounds for attachment as stated in the affidavit are not taken as conclusive, and if the defendant puts those grounds in issue, the burden is on the plaintiff to sustain them. *Waring, supra,* 152 Ind. at 626, 52 N.E. 303. The Court then continues to state as indicated above the consequences of sustaining or not sustaining those grounds. This holding does not refer to the situation wherein the affidavit is not put in issue and there is therefore not a judgment on the merits of the attachment proceeding as was addressed in the earlier cases of *Harper, Trentman, Sannes* and *Vurpillat.*

*Vurpillat, supra,* is a case with a fact pattern more similar to the present case. In *Vurpillat,* before the trial on the underlying cause of action, a motion to quash a writ of attachment was granted and the attachment proceeding was dismissed with costs awarded to the defendant in attachment. The issue before the court was:

"Had the appellants, in the action against them on the bond, a right to prove that any ground of attachment existed at the commencement of the attachment suit, or that in suing out the writ they acted in good faith, and without any intentions to injure the appellees?"

*Vurpillat, supra,* 2 Ind.App. at 398–399, 28 N.E. 556.

The Court held that the fact of existence of grounds for attachment or good faith of plaintiffs in procuring same did not affect the right of the attachment defendants to recover against the bond and therefore evidence of same was properly excluded.

These cases lead to the conclusion that the attachment may be found to be wrongful and oppressive and a recovery may be had upon the bond when the attachment is dismissed even though that dismissal is prior to a determination as to the merits of the allegations against the defendants or the grounds for the attachment.

The appellants however rely on *Folsom Investment Company, Inc. v. Moore* (5th

Cir.1982) 681 F.2d 1032, to assert that even if recovery against the bond were possible in this situation, wrongful attachment damages were improperly awarded because appellants relied on the advice of counsel and acted in good faith in bringing the action. However, this argument is not persuasive. As was indicated above, *Vurpillat* indicates there is no good faith defense to the recovery on the bond, and *Folsom* does not create a defense applicable to this situation.

■ *Folsom* recognizes a good faith defense to a claim for constitutional tort damages when the actor has relied on presumptively valid legislation which is later held to be unconstitutional. *Folsom, supra,* 681 F.2d at 1037. The decision was an extension of that of the United States Supreme Court, *Lugar v. Edmondson Oil Co.* (1982), 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482,[1] which held:

> "[When] a § 1983 plaintiff challenges the constitutionality of a state attachment procedure, as opposed to making mere nonconstitutional allegations of misuse or abuse of the statute, the private party who sets that attachment scheme in motion is to be considered a state actor. [457] U.S. [922], [942–43], 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482 (1982)."

*Folsom, supra,* 681 F.2d at 1037.

Noting that state officials are immune from liability when performing discretionary functions, the Court addressed the status of the private individual when put in a position where invoking the attachment law will render him a state actor:

> "The private party who invokes a presumptively valid attachment law is not entitled to an immunity because the officer executing it is. Rather, quite independently, the private party is entitled to an immunity because of the important public interest in permitting ordinary citizens to rely on presumptively valid state laws, in shielding citizens from monetary damages when they reasonably resort to

a legal process later held to be unconstitutional, and in protecting a private citizen from liability when his role in any unconstitutional action is marginal."
*Id.*

Therefore the situation addressed in *Folsom* wherein a good faith defense is available concerns reliance on a statute later declared unconstitutional. In the present case the appellants argue they relied on the lack of statutory and case law prohibiting their actions. They did not rely on duly enacted legislation clothed with a presumption of validity which is the situation where a good faith defense is available.

Even if there were such a good faith defense available, it is doubtful it would apply in this case. An attachment proceeding is an ancillary proceeding which is incidental to the main cause of action. *Commercial Credit Corp. v. Ensley* (1964), 136 Ind.App. 389, 199 N.E.2d 108, *trans. denied.* The proceeding being ex parte, it depends on the underlying cause for the filing of the appropriate pleading and service of the appropriate service. The jurisdiction is therefore established by the underlying cause. *Wilkinson v. Moore et al.* (1881), 79 Ind. 397. To bring such an action in a court different from the main action because there is no law indicating a prohibition to such procedure is not necessarily acting in good faith.

■ Finally, in response to appellees' argument that recovery on the bonds is proper, appellants assert that the county courts did not have jurisdiction to entertain the issue of recovery since the courts lacked jurisdiction of the attachment proceedings and their acts were void. Although none of the attachment cases found deal specifically with a situation as presented here, because the nature of attachment is similar to that of a preliminary injunction, case law concerning the injunctive procedure is relevant and analogous. In order to restrain another through the vehicle of a temporary injunction or restraining order, security is required. Ind. Rules of Procedure, Trial

---

1. The *Folsom* court quotes a *Lugar* footnote in which Justice White addresses good faith affirmative defense. The citation to *Lugar* is in error. The quoted portion appears in footnote 23, not 22.

Rule 65(C). The purpose for the security is to provide a *res* for the payment of costs and damages incurred by the restrained or enjoined party if the action is wrongful. T.R. 65(C). This is similar to an attachment process as indicated above. An action on the undertaking for the injunction or restraining order is addressed by Ind. Rules of Procedure, Trial Rule 65.1, as is the action upon the attachment bond, and the rule allows instigation of the action on the undertaking by the filing of a motion rather than requiring the filing of a separate action. T.R. 65(C).

*Robertson v. Smith et al.* (1891), 129 Ind. 422, 28 N.E. 857, concerns recovery against an undertaking for issuance of an injunction after the injunction had been dissolved by the appellate court due to lack of jurisdiction over the person of the defendant. The issue in *Robertson* was the same as that presented in this case:

> "The question we must determine is whether the defendant in such action had the right to resist the making of the order and to apply to the courts for its dissolution, and after having successfully done so hold the plaintiff upon his bond for the necessary expense incurred in the proceeding."
>
> *Robertson, supra,* 129 Ind. at 424, 28 N.E. 857.

The *Robertson* Court determined that the lack of jurisdiction could not be asserted by the petitioner for the injunction as a defense on the bond recovery, and the enjoined defendant could recover on the bond for damages and costs incurred in asserting and proving the lack of jurisdiction. To rule otherwise would put the defendant in the anomalous position of either defending his rights at great expense to himself or ignoring the order of the court before such order is declared irregular. Thus, the plaintiff for injunction is estopped from asserting the lack of jurisdiction as a defense when sued on the bond for recovery of attorneys' fees and expenses incurred in procuring the dissolution of the injunction.

Later case law extended the principle of *Robertson*. The Court in *AFL–CIO Bldg. Trades Coun. v. Yost Constr. Co., Inc.* (1975), 166 Ind.App. 124, 333 N.E.2d 892, held that in cases where the court lacks subject matter jurisdiction to issue the injunction, such lack of jurisdiction may not be asserted in defense to the action for recovery on the bond. The plaintiff who has invoked that jurisdiction is estopped to deny same.

The Supreme Court mandate did not identify the type of jurisdiction lacking in these causes. There are three areas of concern as to jurisdiction: subject matter jurisdiction, jurisdiction of the person and jurisdiction of the particular case. *In re Chapman* (1984), Ind.App., 466 N.E.2d 777, 779, *reh. denied, trans. denied.* The county courts involved in this case are courts of general jurisdiction [2] and may issue writs of attachment. *See: Wilkinson, supra.* Therefore these courts had subject matter jurisdiction. However, due to the particular facts of this case the county courts could have been without jurisdiction over the defendants for lack of process or the case since the main action was pending in federal court. *See: Matter of Adoption of H.S.* (1985), Ind.App., 483 N.E.2d 777, *reh. denied.* As stated above, lack of jurisdiction over the person of the defendants or subject matter would not prevent recovery on the bond and there is no reason to treat lack of jurisdiction of a particular case differently. Therefore, the appellants, having invoked the action of the courts for their benefit, may not now assert the lack of jurisdiction as a defense to recovery against the attachment bonds.

Having determined that the defendants in attachment were not precluded from recovery upon the attachment bonds, the action of each court must be addressed. This requires consideration of the appropriate damages to be assessed in each of the four causes.

■ IND.CODE § 34–1–11–5, *supra,* requires the plaintiff in attachment to exe-

---

**2.** IND.CODE § 33–4–4–3 (1982) addresses jurisdiction of circuit courts; IND.CODE § 33–5–28–3 (1982) addresses jurisdiction of Lake Superior Court; IND.CODE § 33–5–37.2–3 (1982) addresses jurisdiction of Newton Superior Court.

cute an undertaking to cover damages sustained by the defendant if the *proceedings* are wrongful and oppressive. IND.CODE § 34–1–11–38, *supra,* provides for an action by the defendant upon the plaintiff's undertaking if the *proceedings* were wrongful and oppressive. Neither statute, both of which were enacted in 1881, makes reference to the actual seizure of property but requires only that the proceedings be wrongful and oppressive to entitle the defendant to a recovery upon the bond. The action is commenced by filing of the complaint or equivalent document as required by statute. Ind. Rules of Procedure, Trial Rule 3. The statute specifies that upon the filing of the plaintiff's affidavit and undertaking the order of attachment shall issue. IND.CODE § 34–1–11–6. Therefore, reading the above statutes together, the recovery upon the undertaking is not dependent on an actual seizure of the property, but may be sustained on the basis of the proceeding being oppressive and wrongful and the proceedings commence with the filing of the affidavit and undertaking.

This interpretation of elements necessary for a recovery upon the bond is inconsistent with that set forth in *Barnett v. Lucas* (1901), 27 Ind.App. 441, 61 N.E. 683. In *Barnett* the Court stated:

"In order to recover, it devolved upon appellee to show that his property had been levied upon by virtue of the writ in attachment, to procure which the bond in suit was executed. *Trentman v. Wiley,* 85 Ind. 33, 35."

*Barnett, supra,* 27 Ind.App. at 444, 61 N.E. 683.

However, *Barnett* seems in error in its reliance on *Trentman* for the above quoted proposition.

██ In *Trentman* the Supreme Court addressed the correctness of jury instructions. In finding the instruction on damages in error, the Court explained the assessment of damages incurred in connection with an attachment proceeding.

"Where none of the property attached is restored to the attachment defendant, upon a failure of the attachment proceed-

ings, but the same is wholly lost to him, the value of the property, with interest thereon from the time it was taken, and such expenses as were necessarily incurred in the defence [sic] of such proceeding, with interest thereon from the time such expenses were incurred, is the measure of damages. Compensation for the loss is the rule in such cases, and this is awarded by allowing the party the value of his property, the expenses incurred, and such sum in addition, in the nature of interest, as will compensate him for his loss. *Beals v. Guernsey,* 8 Johns. 446 (5 Am.Dec. 348); *Kennedy v. Whitwell,* 4 Pick. 466; Cooley Torts, page 457, and authorities cited.

The party, however, in the absence of circumstances entitling him to exemplary damages, is not entitled to anything more than compensation, and, therefore, is not entitled to interest upon the value of the property attached, and expenses incurred from the time the attachment was commenced, unless the property was then seized and the expenses were then incurred. The expenses in this case were not incurred at the time the attachment was commenced; and, as the instruction in question directed the jury to assess interest as damages upon expenses before they were incurred, it was, in this respect, erroneous."

*Trentman, supra,* 85 Ind. at 39–40.

Thus the damages available consist of two elements: damages for expenses incurred in defending against the attachment proceeding and damages for injury to or loss of the property once it is seized. Although interest assessments may depend upon the seizure or non-seizure of the property, the compensation for actual loss does not. Having thus determined the measure of damages, each trial court decision is addressed.

The determination of the Jasper Circuit Court awarding damages of $3,500.00 for attorneys' fees and out-of-pocket expenses in quashing the proceeding is affirmed.

The determination of the Newton Superior Court awarding $5,342.65 for attorneys' fees plus costs in obtaining the dissolution of the attachment is affirmed.

The Marshall Circuit Court's award to defendants Charles Arnett and Norma Arnett of $665.00 for attorneys' fees is affirmed. The judgment of the Marshall Court that the remaining defendants could not recover damages because they had no property attached in the county was in error pursuant to the two element theory of *Trentman.* Therefore that portion of the decision is reversed and remanded for reconsideration of damages for attorneys' fees incurred in challenging the action.

The Lake County Superior Court was ordered to refrain from exercising any jurisdiction in this attachment cause. Judge Richards therefore acted properly and in compliance with the Supreme Court's writ of prohibition and mandamus when he refused to entertain the motion for recovery upon the bond. The Lake Superior Court order is therefore affirmed.

It is so ordered.

STATON, P.J., and GARRARD, J., concur.